# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVON R. HAYES, | : | CIVIL NO: 4:14-CV-01922 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | |
| BRIAN LIGHTNER, *et al.*, | : | |
| | : | (Magistrate Judge Schwab) |
| Defendants. | : | |

## <u>REPORT AND RECOMMENDATION</u>

### I.    Introduction.

The plaintiff, Davon Hayes ("Hayes"), a prisoner proceeding *pro se*, commenced this 42 U.S.C. § 1983 lawsuit by filing a complaint, alleging that the defendants violated the Equal Protection Clause of the Fourteenth Amendment and the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Doc. 1*.  On March 10, 2015, we concluded that the complaint failed to state a claim upon which relief can be granted, *doc. 9*, but we recommended that Hayes be allowed to file an amended complaint as to his Equal Protection claim only, which he did. *Doc. 12*.  In response, the defendants filed a motion for judgment on the pleadings, asserting that Hayes's amended complaint is without merit. *Docs*. *23 & 24*.  For the following reasons, we recommend that the defendants' motion be granted in part and denied in part.

**II.    Background and Procedural History**.

In his amended complaint, Hayes names the following as defendants:  (1)
Brian Lightner ("Lightner"); (2) Jon Fisher ("Fisher"); (3) Lonnie Oliver
("Oliver"); and (4) Jay Whitesel ("Whitesel"), all of whom were employees of the
Pennsylvania Department of Corrections.  *Doc. 12*.  Hayes complains about the
denial of certain jobs and the denial of access to the main yard at certain times.  *Id.*

Hayes first complains that during his incarceration at SCI-Smithfield, the
defendants treated him differently from similarly situated inmates by refusing to
assign him certain jobs (i.e., jobs "off the housing unit") based on his past
institutional record.  *Id.* at ¶¶ 12 & 13.  Such treatment, Hayes alleges, is irrational.
*Id.*  According to Hayes, he was accused of several violations of institutional rules
at previous prisons, including assaults, sexual harassment, indecent exposure, use
of abusive language, refusing to obey an order, and threatening an employee.  *Id.* at
¶12.  All of these violations, Hayes alleges, were in the years of 2008, 2009, 2010,
and 2011, and he had been "misconduct free" from September 27, 2011 until
November 27, 2014.  *Id.* at ¶¶12, 14 & 18.  Other inmates to whom the defendants
assigned jobs, according to Hayes, had the same institutional record as he.  *Id.* at
¶13.  These inmates, however, were assigned the types of jobs that Hayes was
denied, and they worked six hours a day and made 42 cents an hour.  *Id.* at ¶¶13 &
25.  According to Hayes, the Department of Corrections has a policy to assign

inmates six-hour jobs, but he has been denied a six-hour job. *Id.* at ¶¶10 & 30. Hayes alleges that he submitted request slips to Lightner several times asking for job assignments, extension of his work hours, and a pay raise, but he was repeatedly told that he was on waiting lists and not eligible for six-hour positions or a pay raise. *Id.* at ¶¶ 16 & 17.  Hayes also alleges that on June 2, 2014, he submitted a request slip to Oliver complaining about being treated differently from other inmates, and she responded that "your past speaks for itself." *Id.* at ¶15. According to Hayes, he did not have negative work reports from his previous job assignments, and he was in fact "in a better position than the inmates [to whom] Defendant Lightner assigned jobs." *Id.* at ¶18.  Hayes further alleges that one inmate, Bret Deshields, was criminally convicted of assaulting correctional officers; Lightner knew of the conviction but still assigned him to work at the Culinary Department, the same opportunity that Hayes was denied. *Id.* at ¶27.

Hayes, in addition, asserts that the denial of jobs is due to his life sentence. *Id.*  According to Hayes, even though he was placed on waiting lists, Lightner had never intended to assign him a job. *Id.* at ¶20.  Hayes alleges that Lightner, in responding to one of his request slips, stated that "[f]our hour positions were created to provide max number of inmates opportunities to advance, provide positive reinforcement for developing good work habit, that are important for the inmates reintegration into the community upon release." *Id.* at ¶18.  According to

3

Hayes, such response showed that Lightner "deliberately place[d] him at the bottom of all waiting list[s] for jobs because [he] is a lifer and has a slim chance of re-entering into the community." *Id.* Hayes also alleges that on June 30, 2014, Oliver responded to his request by stating, "[l]ifer's get more scrutiny for job placement." *Id.* at ¶20. Hayes asserts such treatment is irrational because he was not applying for jobs outside of the prison or on the docks in the back of the prison. *Id.* at ¶23. Rather, he claims that he was merely "requesting to be placed in . . . [a] job where he can have the chance to make six hours and an opportunity to reach 42 cents per hour." *Id.* Hayes further alleges that there are inmates in job assignments off of their housing units who have the same institutional records as he, and they are lifers. *Id.* at ¶18. Hayes claims that he is no different from them, but Lightner treated him differently. *Id.*

Hayes also asserts that Oliver has a documented history of being a racist and calling African Americans "Niggers." *Id.* at ¶22. He alleges "Oliver's mind frame towards African American inmates shows that she subjected [him] to unequal protection/treatment when she was employed by SCI-Smithfield." *Id.* Hayes, in addition, asserts that Lightner denied him jobs because he had filed grievances against him and lawsuits against the Department of Corrections. *Id.* at ¶¶22 & 23. To support his assertion, Hayes alleges that he spoke to all the inmates confined at SCI-Smithfield who had sued the Department of Corrections, and he learned that

Lightner had "deliberately and intentionally denied them jobs off of their housing units." *Id.* at ¶24.

In the second part of his amended complaint, Hayes claims that Fisher, Oliver, and Whitesel have treated him differently from similarly situated inmates confined in other state institutions by denying him full access to the main yard. *Id.* at ¶34. He alleges that the defendants, by enforcing a local policy that is inconsistent with the Department of Corrections' policy on standard count times, have denied him full access to the main yard for about one hour on certain days. *Id.* at ¶¶33 & 34. Hayes further alleges that the local policy has denied him access to the main yard as a result of weather. *Id.* at ¶34. According to Hayes, other correctional facilities in Pennsylvania do not have similar policies. *Id.* Hayes, in addition, claims that the local policy at issue has treated housing units at SCI-Smithfield differently. *Id.* at ¶36. According to Hayes, he and other inmates from certain housing units are denied full access to the main yard on certain days of a month and thus treated differently from inmates similarly situated at other units. *Id.* Hayes asserts such treatment is irrational and has caused him mental anguish. *Id.* at ¶¶ 36 & 44.

According to Hayes, he has pursued all avenues of relief available within the prison's grievance system before bringing this civil-rights action. *Id.* at ¶¶46 & 47. In his amended complaint, Hayes seeks injunctive relief and monetary damages.

*Id.* at ¶¶52 & 53.   The defendants filed an answer on June 5, 2015.  *Doc. 17.*  The

defendants then filed a motion for judgment on the pleadings on July 21, 2015,

asserting that Hayes failed to state an equal protection claim upon which relief may

be granted.  *Docs. 23 & 24.*  For the reasons set forth below, we recommend that

the defendants' motion be granted in part and denied in part.

## III.   Discussion.

### A.  Motion for Judgment on the Pleadings and Pleading Standards.

Pursuant to Fed. R. Civ. P. 12(c), a party may move for judgment on the

pleadings "[a]fter the pleadings are closed—but early enough not to delay trial."

The pleadings are closed after an answer is filed, along with a reply to any

additional claims asserted in the answer.  *Stewart v. XRIMZ, LLC and First Choice*

*Financial, Inc.*, No. 10-CV-2147, 2011 WL 5878381, at *1 (M.D. Pa. Nov. 23,

2011).  The standard of review for a motion for judgment on the pleadings is

identical to that of a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Brautigam*

*v. Fraley*, 684 F.Supp. 2d 589, 591 (M.D. Pa. 2010) (citing *Turbe v. Gov't of*

*Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991)).  "The only notable difference

between these two standards is that the court, for a motion on the pleadings,

reviews not only the complaint but also the answer and written instruments

attached to the pleadings."  *Id.*  The distinction between the two standards is

"merely semantic." *Id.*   We, accordingly, will apply the motion to dismiss standard to the defendants' motion.

In reviewing a motion for judgment on the pleadings, the court "must review the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Stewart*, 2011 WL 5878381, at *1. Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox*

*Rothschild, O'Brien & Frankel*, Inc. 20 F.3d 1250, 1261 (3d Cir. 1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. V. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson*, 551 U.S. at 94 (quoting *Estelle v.*

8

*Gamble*, 429 U.S. 97, 106 (1976)).  Nevertheless, "pro se litigants still must allege

sufficient facts in their complaints to support a claim."  *Mala v. Crown Bay*

*Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).  Thus, a well-pleaded complaint

must contain more than mere legal labels and conclusions.  Rather, a *pro se*

complaint must recite factual allegations that are sufficient to raise the plaintiff's

claimed right to relief beyond the level of mere speculations, set forth in a "short

and plain" statement of a cause of action.

### B.  The Defendants' Motion Should Be Granted in Part and Denied in Part.

Here, Hayes's § 1983 action alleges that the defendants violated his

constitutional rights protected under the Equal Protection Clause of the Fourteenth

Amendment.  42 U.S.C. § 1983 provides, in pertinent part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other property proceeding for redress.

*Id.*  "Section 1983 is not a source of substantive rights, but merely a method to

vindicate violations of federal law committed by state actors."  *Pappas v. City of*

*Lebanon*, 331 F.Supp.2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v.*

*Doe*, 536 U.S. 273, 284–85 (2002)).  Thus, to establish a claim under § 1983, a

plaintiff must show that (1) the conduct complained of was committed by persons

9

acting under the color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).  "[T]he first step in evaluating a [S]ection 1983 claim is to identify the exact contours of the underlying right said to have been violated and to [then] determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Morrow v. Balaski*, 719 F.3d 160, 165–66 (3d Cir. 2013) (internal quotations and quoted case omitted).

After reviewing the facts presented in the amended complaint and the inferences to be drawn therefrom in the light most favorable to Hayes, we conclude that Hayes has alleged facts from which it can reasonably be inferred that the defendants were state employees acting under the color of state law, and they have violated his rights protected under the Equal Protection Clause of the Fourteenth Amendment by refusing to assign him certain jobs.  We conclude that Hayes has failed, however, to allege facts showing that the defendants violated his rights protected under the Equal Protection Clause by denying him full access to the main yard.  We, accordingly, recommend the defendants' motion be granted in part and denied in part.

### 1. Hayes Has Alleged that the Defendants Violated His Right Under the Equal Protection Clause of the Fourteenth Amendment by Refusing to Assign Him Certain Jobs.

The Equal Protection Clause of the Fourteenth Amendment directs that all similarly situated individuals be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Two independent legal theories exist upon which a plaintiff may predicate an equal protection claim: the traditional theory and the class-of-one theory.

The traditional theory protects a plaintiff from discriminatory treatment based on membership in a protected class. *See, e.g., id.; McLaughlin v. Florida*, 379 U.S. 184, 192 (1964). To assert a protected-class claim, the plaintiff must demonstrate that (1) he or she is a member of a protected class and (2) the government treated similarly situated individuals outside of the protected class differently. *See Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2005) (observing that a prima facie case under the Equal Protection Clause requires plaintiffs to prove membership in "a protected class and that they received different treatment than that received by other similarly-situated individuals"). Under this theory a plaintiff "must prove the existence of purposeful discrimination" by the defendants. *Keenan v. City of Phila.*, 983 F.2d 459, 465 (3d Cir. 1992).

Under the class-of-one theory, a plaintiff may advance an equal protection claim absent membership in a protected class if the plaintiff shows that the defendants engaged in irrational and intentional different treatment of him when compared with similarly situated individuals. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). This theory allows a plaintiff to assert an equal protection claim regardless of protected class when the government irrationally treats the plaintiff differently from similarly situated individuals. *Id.* at 564; *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). "Persons are similarly situated under the Equal Protection Clause when they are alike in 'all relevant aspects.'" *Startzell v. City of Philadelphia, Pennsylvania*, 533 F.3d 183, 203 (3d Cir. 2008). To prevail on a class-of-one claim, the plaintiff must demonstrate that: (1) the defendants treated him differently from others similarly situated; (2) the defendants did so intentionally; and, (3) there was no rational basis for the different treatment. *Hill*, 455 F.3d at 239. The plaintiff need not "identify in a complaint actual instances where others have been treated differently." *McLaughlin v. Forty Fort Borough*, 64 F.Supp. 3d 631, 647 (M.D. Pa. 2014) (citing *Phillips v. Cnty. of Allegheny*, 515 F. 3d 224, 244 (3d Cir. 2008)). Rather, "a general allegation that plaintiff has been treated differently from others similarly situated will suffice." *Id.* Determination of whether individuals are similarly situated is a "case-by-case fact-intensive inquiry." *Id.* at 648. "For that reason, some courts in this Circuit

have state that a final determination of this issue is inappropriate at the motion-to-dismiss stage." *Id.*

Because prisoners do not constitute a protected class for Fourteenth Amendment purposes,[1] *McKeithan v. Kerestes*, No. 11-CV-1441, 2014 WL 3734569, at *10 (M.D. Pa. July 28, 2014), Hayes's claim survives only if he has properly stated a violation of his equal protection rights under a class-of-one theory. Thus, Hayes must allege facts showing that he has been treated differently from similarly situated inmates, that the defendants did so intentionally, and that this difference in treatment bears no rational relation to any legitimate penological interest. In his amended complaint, Hayes asserts that he and some inmates to whom the defendants had assigned jobs had the same misconduct history, including a history of assaults, sexual harassment, indecent exposure, use of abusive language, refusing to obey orders, and threatening employees. *Doc.12* at ¶13. These inmates, according to Hayes, were assigned to work off of their housing units, worked six hours a day, and earned 42 cents an hour, all of which

---

[1] In the amended complaint, Hayes asserts that Oliver had a documented history of being a racist because she called African Americans "Niggers." Only in passing, without citing to anything in support, does Hayes assert that "Oliver's mindset towards African American inmates shows that she subjected [him] to unequal protection when she was employed by SCI-Smithfield." *Id.* at ¶22. Hayes's assertion is insufficient to raise an equal protection claim under the traditional protected-class theory because he does not show how Oliver treated similarly situated individuals outside of the protected class, i.e. of a different race, differently than she treated him.

Hayes was denied. *Id.* at ¶¶13 & 25.  Hayes alleges that some of these inmates,

like him, are lifers. *Id.* at ¶18 (alleging that "there [are] actual inmates in other job

assignments off of their housing units [who] have assaults, sexual harassment,

indecent exposure . . . and other misconduct charges *and [are] [] lifer[s]* like Mr.

Hayes, however, Mr. Hayes is being denied the same opportunity as them.  Mr.

Hayes . . . is no different [from] them, but is being treated differently from them by

Defendant Lightner." (emphasis added)).   Hayes alleges that he had submitted

request slips to the defendants several times, but they failed to correct the situation.

*Id.* at ¶¶14-17.  The defendants, in their brief in support of the motion, claim that

the denial of job assignments is due to security and safety concerns because of

Hayes's misconduct history and life sentence. *Doc. 24.*  Hayes, in the amended

complaint, argues that heightened scrutiny imposed on lifers is irrational because

he was not looking for jobs outside of the prison. *Doc. 12* at ¶23.  Although Hayes

fails to allege any facts to show how imposing scrutiny on lifers for job placements

within the prison is irrational, he does allege that some inmates to whom the

defendants assigned jobs off of the housing units are also lifers. *Id.* at ¶13 & 18.

Hayes further alleges that Lightner denied him jobs because he had been filing

lawsuits against the Department of Corrections. *Id.* at ¶22.  According to Hayes,

he spoke to all the inmates confined at SCI-Smithfield who had sued the

Department of Corrections, and he learned that Lightner had "deliberately and

14

intentionally denied them jobs off of their housing units." *Id.* at ¶24.  Based on
these allegations, Hayes has alleged facts showing he and some inmates to whom
the defendants have assigned jobs off the Block are similarly situated, the
defendants intentionally treated him differently, and this difference in treatment
bears no rational relation to any legitimate penological interest.  Thus, the amended
complaint states an Equal Protection Claim upon which relief can be granted with
respect to the assignment of jobs.

### 2. Hayes Fails to Allege that the Defendants Violated His Right Under the Equal Protection Clause of the Fourteenth Amendment by Denying Him Full Access to the Main Yard.

Hayes further claims that the defendants have created a local policy that
treated him differently from similarly situated inmates confined in other state
institutions by denying him full access to the main yard during his exercise time on
certain days.  *Id.* at ¶34.  Even assuming that other correctional facilities in
Pennsylvania do not have similar local policies as Hayes has alleged, we find that
Hayes has failed to show how he and inmates confined in other correctional
facilities are similarly situated.  In fact, prisoners incarcerated at different state
prisons are not similarly situated.  *William v. Price*, 25 F.Supp.2d 605,620 (W.D.
Pa. 1997) (finding that death row inmates confined at SCI-Greene were not
similarly situated to death row inmates confined at Graterford.  "The fact that they
are incarcerated in different prisons is the first relevant difference.").  Hayes also

claims that the local policy regarding count time and the weather has treated him differently from similarly situated inmates confined at other housing units at SCI-Smithfield by denying his housing unit full access to the main yard. *Id.* at ¶36. Again, Hayes has failed to show how he and inmates confined at other housing units who are allowed full access to the main yard are similarly situated.   Further, Hayes has not alleged any facts to show that the local policy bears no rational relation to any legitimate penological interest.  As the defendants assert in their brief, the local policy concerns accountability of inmates and bad weather as it relates to the outside yard. *Doc. 24.*  Such security-based concerns appear to provide a rational basis for the local policy.  The court, in fact, must defer to policy decisions made by prison officials, because they are "in the best position to make difficult decisions involving prison administration." *Scott v. Horn*, No. 97-1448, 1998 WL 57671, at *8 (E.D. Pa. Feb. 9, 1998) (citing *Turner v. Safley*, 482 U.S. 84-85 (1987)).  As a result, we conclude that Hayes has failed to show how the defendants, through creating the local policy, have violated his rights under the Equal Protection Clause of the Fourteenth Amendment.

## IV.   Recommendation.

As a result, **WE RECOMMEND** that the defendants' motion (*doc*. 23) for judgment on the pleadings be granted in part and denied in part: the defendants should be granted judgment on the pleadings as to Hayes's Equal Protection claim

regarding denial of full access to main yard, and the defendants should be denied judgment on the pleadings as to Hayes's Equal Protection claim regarding denial of certain job assignments.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this **14th** day of **October 2015**.


*S/ Susan E. Schwab*
**Susan E. Schwab**
**United States Magistrate Judge**